very much, Mr Macaulay. And we are ready to begin. We call our first case thing versus Attorney General. Before we begin, I want to thank Judge Marilyn Horan from the Western District of Pennsylvania, who's joining us on the panel today. It's an honor to have you with us, Judge Horan. Uh, and we will now, uh, call Mr Leshek for Mr Singh. Good morning, Your Honors. Yes, please. Good morning, Your Honors. May it please the court counsel for petitioner, Balhinder Singh. I would like to reserve three minutes for rebuttal. Thank you, Your Honors. The defendant, if a defendant in a criminal case pled guilty in exchange for a prison sentence of five years, but then at the time of sentencing received a sentence of 20 years without being provided an opportunity to withdraw his plea. First, such a sentence would not be upheld on appeal. Why? Because a defendant must be on notice of material consequence of their plea, such as their potential prison sentence. This knowledge of the material consequence of the plea is that the plea may be knowingly entered. This is also the key to Padilla versus Kentucky and why a non citizen must be warned of the potential immigration consequences so that they may make a knowing place. The government. Hold on, especially we, you know, we'll give you a chance, uh, to get to your Padilla some questions. I imagine my colleagues do, too. Before before we get into that, um, first off, um, in your in your briefing, you seem to indicate that, uh, um, Chevron doctrine doesn't have anything to do with this case because Costello predates, um, the cases that are being relied upon. That's Rossi Gonzalez. Murrow. Um, can you can you tell us, um, how? How would you reconcile that argument with the Supreme Court statements in Brand X, which seemed to, uh, pretty strongly indicate that, uh, look, if you've got, uh, if you've got a later discussion, of course, prior judicial construction of a statute trumps an agency construction otherwise entitled Chevron deference only if the prior court decision holds that its construction falls from unambiguous terms. The statute leaves no room for agency discretion. That's a That's a Brand X quote. How do you get around Brand X? Uh, runner, as we as we explained, uh, you know, my son Leach mirror and Neil can all be distinguished from Brand X because all of those cases dealt with conflicts between pre Chevron judicial interpretations and post Chevron interpretations of the same statutory provisions by administrative agencies. And, uh, therefore, Brand X does not support Chevron deference here either. Uh, respondent argues that because Costello predates Chevron under Brand X prior judicial constructions cannot foreclose Chevron deference to the B. I. S. Interpretation. However, quite the contrary, because Costello predates Chevron, this actually means that Costello is not subject to either Brand X or Chevron. Rather, where it's bound by the doctrine of starry decisive. Well, so are you suggesting that all decisions that came prior to Chevron, uh, are are immune from that later development in the law? I mean, lots of folks aren't fans of Chevron deference. I raised my hand as one of them, but it's the law. Uh, are you saying starry decisive always trumps the directions that we've got about, uh, that we got from the Supreme Court? Low those many years ago in Chevron where we're the Kate, Your Honor, where the case involves, um, a judicial precedent that preceded Chevron. Uh, and there's a substantial body of case law interpreting a federal statute, and that case law existed pre Chevron. Yes, Your Honor, we are. And we and and the argument we made is that those three cases actually show that they stand for that proposition. Unleash mirror and Neil stand for the proposition that in these pre Chevron cases with substantial bodies of case law interpreting federal statutes, those those prior federal interpretations cannot be superseded by the Chevron doctrine. Also, there's wrecking. There was also a recognition of this in Lietel versus Ashcroft from the Supreme Court in 2004, where the where the Supreme Court noted that the Board of Immigration Appeals has no expertise in construing Supreme Court decisions the same way that the B I A does not have any expertise in destroying a federal criminal statute Chevron. Well, but the deference issue here isn't whether whether the B I A's got a better insight on Supreme Court case law than the Supreme Court does. That's I don't think anybody's arguing that what I hear the government arguing we'll hear from them in a little bit, I suppose, is that what we're talking about here is the, uh, the B I A interpreting the I N A what the I N A means, and that's something they're supposed to have expertise in, and that's something we're supposed to be paying attention to them when they rendered decisions about. So, uh, given that, uh, that they're they've they've got these decisions, Rossi and, uh, the follow on one Gonzalez Muro, where where they're saying, Look, we're the experts here, and we're telling you that this king that this interpretation of the I N A that's being pressed on you by, uh, Mr Singh is not accurate. Um, what is it that makes? Uh, well, to put it bluntly, why? Why is the Costello decision rooted as it is in pre amendment? I N A more persuasive than what the B I A itself is telling us the I N A means. What's argue for us? Why? It's a more persuasive understanding of the statutory text. What you're telling us the well, the understanding the court applied in Costello, the Supreme Court. They interpreted the 1952 version of the I N A or the pre the pre Ira I N A as right, according to accepted fundamental canons of statutory construction. And this is also something that's been recognized recently in the Kaiser versus Kaiser versus Wilkie. Now, Kaiser wasn't involving Chevron, but there was no right. That's how that's our difference. And I understand you've got an argument about that, but I don't I don't want to take up the whole time because I judge me and Judge Rand probably have questions, but I really am trying to get you to to focus in on. And let me try to be more precise. The government says, Hey, the that decision of the Supreme Court in Costello that was all about that earlier version with the J. Rad and that that just that's been swept out of the law has the real decisional hinge point in Costello just no longer exists. So you shouldn't pay attention to it. Why are they? Why are they wrong? There's a rule of lenity piece in there that you could talk about. There is some other thing. But why are they wrong when they say the fundamental underpinning of Costello has been eliminated? Don't pay attention to it. Well, Your Honor, first of all, as a matter of law, uh, the fundamental underpinning of Castile has not been eliminated it as as the Fifth Direct the court's attention to footnote four of Aqpala. They point out in footnote four of Aqpala that there's actually two distinct rulings of Costello, one involving I. N. A. Section 2 41, which is now was by Ira Ira recategorized at 2 37. And the second ruling is about I. N. A. Section 3 40 A. Now, although I. N. A. Section 2 41 has undergone vast changes as a result of many amendments since then, including recategorization in 2 37 by Ira Ira Section 3 40 A, on the other hand, is a vestigial organ of the 1952 Act and pretty much exist in exactly this virtually the same way it existed in the 19 to 1952 acts. Although Section 3 40 A has under undergone since Costello six amendments, Congress never none of those six amendments changed the structure of Section 3 40 A to something fundamentally different than how it existed at the time. Costello was decided in 1964. Therefore, I would so what's that? So what's that language? What's what's that? That through thread that thing that you're saying? Hey, it's the same and it's still there. What is it exactly in that that gives you the leg up? You're looking for this. The statute itself has continued to exist in in in those words. There were amendments that were made to the language, but it was never. It was never something like 2 12 C that was repealed or or even like 2 41, which was, uh, recategorized or, um, re, um, moved from 2 41 to 2 37. Uh, it's it's 3 40 has always been 3 40 and remains 3 40. And the language of 3 40 has remained that same language with minor modifications. And and that and that language give it to us. What's that language? It's your talent on. Uh, well, when I'm pointing out the language itself is not is not helpful. It's only explaining that Section 3 40 provides it shall be the duty of the United States attorney of the respective districts to institute proceedings for the purpose of revoking and setting aside the order permitting such person to citizenship and canceling the certificate of naturalization and such revocation and setting aside of the order admitting such person shall be the ab initio, the so called ab initio race actualization court in Costello. That was the language in 1964, and that is the language now. And okay, all this goes. That's what I thought. All this goes to your ab initio argument. Yeah, so assume for the sake of discussion that you win that we think of Paula is correctly decided that you've got the better of it on that and that they don't get to reach back in time and like jump in the way back machine and make it all different. Uh, with an ab initio argument, does that answer their fundamental point? Their first point, though their first argument isn't an ab initio point. It's that it's that Rossi is correct. As a matter of law, Rossi is correct, and Costello isn't contrary to Rossi. It's just earlier law that doesn't take account of what Diana as it stands today means. How do you address that? Not the ab initio point. Well, we, Your Honor, we perhaps not understand the court question, but we strongly argue that Rossi is wrong as a matter of law and also another point. As I mentioned, Paula talks about two distinct holdings of Costello. Rossi treats it as if it's all one in the same. Rossi treats it as if the J. The fact the J. Rad no longer exists answers the whole question. But there's actually two distinct questions. One is the statute status neutral, and two can the alien be considered to have been an of conviction by virtue of ab initio denaturalization. Those air two distinct legal questions, right? You think legal rulings and but not to lose the forest for the trees are really our primary argument here is that regardless of the statutory, the court really here has has if the court continues to uphold its its reasoning from Zao, that would create a constitutional avoidance doctrine. The court either has to confront the constitutional conflicts between Rossi and the sixth and Fifth Amendment, or the court has to adopt a statutory construction which will avoid a constitutional conflict. And that's really what this case is fundamentally about. Yeah, well, you put your finger on it. Constitutional avoidance tells us we should probably not be addressing the constitutional due process argument in the first instance, right? But we've we've taken you right up to your time, and I have not really given a shot for Judge May be in judge ran. So let me ask my colleagues here. Judge, maybe you have questions. It did. Judge George. Thank you. Castle like to go in a slightly different direction to begin with and talk about why were in this posture at all. And I'm hoping you can shed some additional light as to when Mr Singh was admitted to the United States. As I understand it, Mr Singh comes to the country in or about 1991. Is that correct? Yes, right. When he arrived at L. A. X. And when he does, he's immediately taken into detention and found excludable and removable and proceedings have begun. Is that is that also right? Well, Your Honor, he arrived at L. A. X. And he presented himself for inspection at L. A. X. International Airport. And so there happens with that infection. That's well, that's where he's put into exclusion proceedings. Correct. And then and then that doesn't that doesn't go anywhere because he doesn't appear for those proceedings. And later on, he he's been continually in the United States since 1991. Yes, Your Honor. Okay, what is the point at which he is inspected at a port of entry and found admitted about admissible to the United States? Because I want to I want to find a man with with we're I don't know whether anybody else is having a hard time, but you're frozen. Uh, it's not making 91, right? So it has to be a later moment. Your honor, I didn't hear my losing your question because you're all you on video had frozen. Right. Can you can you repeat that last question? Judge maybe because you you froze right at the point where you said, I would like to know when he was ever inspected and lawfully admitted. I think at that point, things went haywire. Yeah, guys, I I apologize to the court. I apologize to to counsel. I don't know what's going on here with the Internet connection. Yet another challenge of these times. Are we able to hear me now? I hear you perfectly fine. Now, your honor. Yes. Well, we did. Now you different. Can you guys still hear me? Now you're back. All right, guys, I'm gonna defer to judge Tran for the moment until I can try to fix this. Thank you. Okay, I would suggest possibly if you can't get it fixed, just calling in with the phone. Um, and what I've done in the past, when I have frozen on the video, if you call, you can you can come in video. But then instead of opting for Internet audio, you can call in on your phone. Um, and that will give you a little bit more flexibility. So even when you freeze this video, you can still we can still hear you. But maybe you may not be hearing me right now. I'm hearing you. I'm trying to work on that momentarily. Thanks. And I don't have any questions at this point. All right. Well, I I will. I know that Judge Maney does have some questions, so I'm gonna with the indulgence of all concerned if that's okay. I do have a couple more questions, and we're on our clock now, and we will. We will give the council for the respondent Miss Gordon extra time if she feels like she needs it. Um, so, uh, since since, um, you do want to speak about Padilla versus Kentucky, and we didn't give you much time to talk about that. I would like to ask you a question concerning that argument. Um, you make the pitch that Rossi a matter of Gonzalez Muro directly conflict with Padilla. But, uh, is is that? Is that really the case? I mean, isn't it even it even if we were to accept your argument that Costello survives? Uh, and that something like the rule of lenity needs to apply, uh, and therefore, uh, there's not a there's not a effect of his D naturalization that springs back in time. Uh, doesn't does that does that mean that that that that Rossi and Gonzalez Muro were decided incorrectly as a matter of constitutional law? Do you understand what I'm trying to ask? Can the two of them be harmers? In other words, can one in the same time Padilla versus Kentucky is, of course, controlling law and that Rossi and Gonzalez Muro are correct in the mind run of cases? Uh, or is that just absolutely reconcilable? There is a way is, in fact, a way that the court can hold that Rossi and Gonzalez Muro can be upheld in a time. This is because, as I noted in my brief, Padilla is not retroactive. So that so that's very clear. The China decision is very clear. Padilla is not retroactive. Padilla does not apply to convictions entered into before Padilla was decided in 2010. What that means is that even if the court holds there is a constitutional conflict between Rossi, Gonzalez Muro and Padilla, um, Rossi and Gonzalez Muro would actually still remain good law for cases involving convictions from 1966 until 2010 when Padilla was decided since Padilla is not retroactive. Okay, so they're not irreconcilable. It's what you just described, right? Within, um, within the contours of that window of time, correct. But for we would argue that for any case, any case involving a post Padilla conviction, they are irreconcilable and that Rossi and Gonzalez Muro cannot apply to any case involving a post Padilla conviction. Okay. Uh, are you back? Judge? Maybe I am here. Are you able to hear me? Yes, clearly. Okay, please go ahead. I don't know whether you were with us for that, but we were just talking about Padilla and its interaction with Rossi and Gonzalez Muro. But please go go ahead with your line of questioning, sir. I appreciate it. And again, my apologies to the court of the part and the parties. Um, when Council, when we were first speaking, we were talking about the time of admission, a an inspection at a port of entry in 1991. Mr Singh arrives, he's put into exclusion proceedings. When then is his successful admission to the United States? At the time, Your Honor, at the time that he applied for admission, he uh although he was not determined to be admissible at that time, um under under the case law, which we have cited in our reply brief in our supplemental reply brief, he is still considered to be admitted. Okay, so it's it's your argument that his application for an adjustment of status to a lawful permanent resident constitutes admission. And that's why he's that's why he's able to seek this release. Is that got that right? Yes, Your Honor. And what we're basing that on is a matter of C. H. Which is we mental memorandum provided reports direction in matter of C. H. In fact, in matter of C. H. The alien was also found inadmissible and ordered excluded because she was not in possession of a valid immigrant visa. But before the exclusion order was executed, she applied for adjustment of status with the former I. N. S. And in a precedent decision, which remains a precedent decision has never been vacated and remains good law. At this time, the regional commissioner held that the exclusion order did not render her ineligible for adjustments. Although she was inadmissible for lack of a valid piece at the time of the exclusion order, she subsequently became eligible for the visa, which was the basis for adjustment application and thus was no longer inadmissible on that ground. So the factual similarities between matter of C. H. And Mr. Singh's case are they're virtually the same case. They both they both arrived at an airport. They both presented themselves for inspection at the airport. They were both found inadmissible at that time. They were both put into exclusion proceedings, and they were both ordered excluded. And yet the regional director, the regional commissioner in C. H. Concluded that despite all these things, none of those prevented her from being found to have been admitted to the purposes of eligibility for an adjustment under I. N. A. Section 2 45. So paragraph A. So your argument that is is not that. So your argument that is that he is his first arrival in the United States constitutes the inspection and and admission, or is it that under some sort of distinction between as it's sometimes been called procedural and substantive admissions, he's he's deemed admitted for the purpose of seeking this relief. So as the court noted in the letter of the letter to counsel's asking for supplemental briefing, the court asked in regards to there are two particular definitions that were raised. The term admission as defined by I. N. A. Section 101 A 13 and then this separately I. N. A. 101 A 20, which is defining the term lawfully admitted for permanent residence. And as we explained in our supplemental memorandum and as government counsel, in fact, agreed with us completely, I think it's important that petitioner and respondent in this case disagree about a lot of things, but what they do agree on is particularly significant. We both agree that admission under 8 USC 1227 A3 A3 means how it is inspection. Yeah, hold on. Let me just let me cancel. Let me pause you there for a sec. A section because that that definition is that you're giving us. I don't think he's in the statute, right? And it's that's the gloss that cases have put on the language in that section. So I understand that point. And if I'm following you, you want us to accept that point that comes from cases dealing with, for instance, to 12 H or cases like C. H. That it didn't hold than an adjustment of status to lawful permanent resident was an admission. You want the principle to apply here for the purposes of 11 018 13 A. And I and I and I understand why. I just want to make sure that I that that is correct. Yes, Your Honor. Well, um, the Martinez case, which the court brought up stands for that principle and the Martinez cases. Well, doesn't counsel and that's and I appreciate you turn into Martinez because I'm I'm curious whether it really does. I know Martinez talks about 11 or 113. And it does have that reference to the idea that a procedurally regular entry can constitute admission. But Martinez is about to 12 H, right? And and it's not the only case that we have. That's about to 12 H. And not in every case, we don't look to that same standard. So So I guess the first question that is does Martinez really hold what the meaning of 11 018 13 A is? And if so, then why are why would it then apply here? Given our contrary statements about the meaning of that language and other case. So 22 parts to the question, Your Honor, even if the court is not convinced that that is what Martinez stands for, the court is not limited to the Martinez decision for that legal conclusion. The legal conclusion about the definition of admission as only requiring a procedurally regular admission, as opposed to one which is in substantive compliance with the I. N. A. Is found in many other areas. Many other decisions interpreting many other parts of the I. N. A. In more briefly, also cite the matter of and matter of arrogant. And these reach the same exact conclusion about the definition of admission. As we explained, admission is perhaps the defining concept of the I. N. A. As a whole. And historically, and, you know, I discussed the historic the history of, you know, the distinction between exclusion and deportation proceedings. I was based on the concept of entry, how the concept of entry was replaced by Ira. Ira. Ira. Ira replaced the entry concept with admission as defined by eight U. S. C. 11 0 1 A. 13 A. And it is a fundamental aspect of this concept of admission that a person can be considered admitted even if they were inadmissible or presented false documents. And that's also what he loved and stands for. There's the B. I. A. Decision from 2010 finding that an applicant for admission without entry documents is waived in by Customs and Border Protection at the Mexican border was, quote, inspected and admitted. Uh, and this is as defined by Section 1 0 1 A. 13 A. Does the same the same language getting the same interpretation by the board in a completely separate section of the I. N. A. And this is no quick. And then again, in matter of Arabian interpreting the term, quote, admitted as used in I. N. A. 2 45 a to denote only procedural regularity in an entry and not compliance with substantive legal requirements. And the fact that the that the board reached that conclusion in Arabian is even more significant, given the fact that Arabian is pre Ira. Ira. So in other words, this admission has actually been defined and understood the same way under the I. N. A. For decades, include free Ira. Ira and post Ira. Ira is admission has been understood this way, and that is profound. I can't find it, and I appreciate that that summary, and I don't disagree with your characterization of some of those decisions. But the two thoughts that I'd welcome you address, and I want to be mindful that we're well over time here. The first is none of those are you are asking if I understand it, then to take that reasoning and logic and apply it to 11 0 1 A. 13 A. As a whole, that would be a step that the court hasn't yet taken. And second, I adjustment of status to lawful permanent residency is another novel interpretation that you're asking for the court to make. So so I sort of see two legal leaps that we need to make, one of which seems to be seems to be a contravention of how it is that we ruled in Haneen. But the first of which would say that for all matters, we're now going to to embody this substantive procedural distinction that has shown up in other cases. So So am I correct in saying that there is a twofold expansion of our understanding of the law that would be necessary to get to this admission definition? The church this case rests upon the task of traditional interpretation. Those are the your honor has correctly identified the precise point that which the judicial interpretation is needed. And yes, we do. Uh, would you advocate for the court to take those decisions? And I believe those are the correct decisions not only for this case, but that those if the your honor has pointed out, this court has not explicitly made those interpretations in prior decisions. But I would advocate for the court to take that task of judicial interpretation. It will foster uniformity and coherence of the act. And counsel, I appreciate that. Thank you for addressing the questions of Judge Jordan. Thank you for the indulgence again. Okay, thanks, Judge. Maybe Mr Leszek will have you back for your three minutes of rebuttal. Um, Miss Gordon, your argument for the United States. Yes, thank you. May it please the court. I'm Virginia Gordon for the respondent and your honors. I'd like to come back to some of the discussion about deference and how Costello, uh, impacts this decision. Um, and as was by the judicial recommendation against deportation. So Costello recognized there's an ambiguity in the statute, a very similarly worded statute. So the question was, does the person need an alien? Yes. Well, let's let's stop right there. Okay, let's let's let's begin by unpacking Costello a little bit. Uh, first, uh, I take it that you like Costello when you like Costello and you don't like Costello when you don't like Costello because you seem to, uh, um, be ready to embrace it when it comes to saying things like, well, um, it's there's an ambiguity in the statute. So you really should pay attention to that and say there's an ambiguity. And then when it comes to saying things like, well, you know, even if we didn't have this J rat issue, we would interpret this in a way that gave the benefit, this rule of lenity issue. You want us to brush that aside? Uh, can you, can you really have it both ways? Counselor, can you have us embrace part of Costello and walk away from the rest of it? Or are you in for a penny and for a pound? I think what the issues of Costello is that it is a case from 1964 and it is a different statutory scheme. So I think that we can, um, not necessarily throw away the rule of lenity, but we can talk about it in a different way. And I think that's what happened with Chevron, even if, even with, um, I respect your, um, not being a fan of Chevron, even because that came later, Costello was working on the statutory interpretation canons that existed at the time it was decided. So it found the statute ambiguous and then it applied two statutes of two canons of statutory interpretation at first, wanted to read the statute as a whole and make it harmonious. And so it found section 1251 B2, which specifically referred to section 1251 A4 and only to section 1251 A4. So in looking at that provision, Costello said, well, this person would be at a disadvantage if we consider him an alien at the time of the sentencing, because he couldn't have requested that judicial review against deportation. And then applying the rule of lenity said, we're not going to make that happen. And it applied that way. I thought it said that rule of lenity piece, not as, uh, not as a part of its discussion of JRAD, but as a, as a, an explicit statement that regardless of JRAD, it said, despite the impact of the JRAD decision, that's the quote, despite that, like set that aside. That's how I read those words despite that. And, and it says it should still be thought that the matter was in some doubt, if the matter was still in some doubt, we would nonetheless be constrained by step accepted principles of statutory construction to resolve the doubt in favor of the petitioner. So are you saying that the, that I guess I'm having, I'm struggling a little bit because you really want us to dismiss Costello as just a function of JRAD existence, just kick it to the, kick it to the curb when it comes to this rule of lenity. But it looks to me like the rule of lenity was a very important part of the Supreme court's decision. Wasn't it? No, I, I, I wouldn't say that it was not an important part because of that language thing, despite the JRAD. So to be fair, then Costello did want to look at what was putting this person in a disadvantageous position and saying they didn't like the relation back idea. We thought as, as that being connected to the judicial, the, the JRAD. But again, it is. Okay. Okay. Yes, it is. But, but stick with me here. If that's true. And I, and I, and I do think we want to, you know, constitutional avoidance is a real thing. We don't want to be opining on due process implications when we don't have to, but given Costello's statements about the rule of lenity and given the argument that's been made by Mr. Singh's counsel about the, the oddity, the strangeness of saying to somebody, look, you were a citizen at the time you pled guilty. And so there's no Padilla problem here because only non-citizens, only aliens have to be warned about immigration consequences when they're pleading guilty. And you were a citizen then. So as a sixth amendment and due process matter, you didn't have to be warned about that because you were a citizen then. And in the next breath saying, guess what? You're not really a citizen then because you came in unlawfully and fraudulently. And therefore we've denaturalized you and you're subject to removal and deportation. We're kicking you to the curb. How, how in light of a rule of lenity overhang from Costello, can both those things be happening at the same time, Ms. Gordon? Well, I think we see the Padilla issue slightly differently because Padilla is a remedy in a criminal area and it's not the government who is depriving Padilla of his warnings or Mr. Singh. It was Mr. Singh. Mr. Singh made a mistake in his immigration history and fraudulently obtained denaturalization and he did his criminal offenses in no way... With respect, that's not answering my question. Okay. I understand you have your own equities argument that he's a liar, a no good liar, and there are consequences to being a no good liar. I got that. I know your argument. I'm trying to get you to answer in the light of this rule of lenity statement from Costello, how can the government make the argument that Padilla has... There's just no equitable force, no logical force in the lenity world to the assertion that it's odd for the government to say, you didn't need to be warned of immigration consequences because you were a citizen, and then say, we're removing you because you weren't really a citizen. Well, I think we look at it as saying the rule of canon of last resort, and I think this is where the timing of these cases matters. We're looking at a case from 1964 that is a different statutory scheme and did involve a different way of interpreting statutes. Had Chevron been decided before Costello, Costello Court would have had to say, okay, this is ambiguous, and then it would have had to look at if the board's interpretation was reasonable, but we didn't have that then, so it applied the rule of lenity because that's what exists at the time. But since then, the statute has changed and the board has interpreted a person who is an alien and has been convicted of an aggravated felony as removable, and that is based on saying, well, it's ambiguous, we don't know if he has to be an alien at the time of removal or at the time of conviction. And when you look at the ambiguity in that, under a Chevron analysis, it would say, well, there's the ambiguity. If it's a reasonable interpretation of that statute, then the courts would apply it, and both Rossi and Costello were predating Chevron. So the issue, I think, really... Do either of Rossi or Gonzales-Murrow grapple with the text of the statute at all? They don't... Is there any statutory analysis at all? Your Honor, no. The board did not take a deep textual analysis. What it did in Rossi, which was only two years after Costello, was it recognized that Costello mentioned the ambiguity. That was at 125 in Costello, at 515 in the board, they cited that ambiguity. And because the board read Costello as stating that the JRAD was important, it said there's no JRAD available to someone in Rossi because of a different statutory scheme. Right, understood. But here's my challenge. You're telling us at step two, you're saying, except that there's ambiguity at step one, Costello resolves that. That's what you're telling us. I have my doubts about that, but if I understand you right, you're saying there's ambiguity, Costello says there's ambiguity, and so we're in Chevron world. And now, step two, you should defer to the interpretation that the BIA gives the INA. So if I've understood you correctly, and I look at Rossi and Gonzales-Murrow, and I see they don't wrestle with the text of the statute at all, how can we say, okay, let's defer to that? Why should we be deferring to Ipsy-Dixit declarations of the BIA instead of engaging in textual analysis the way we customarily do? Respectfully, Your Honor, I don't think that we would say necessarily that Costello tells us it's ambiguous, but Costello is instructive in that it can be ambiguous. Do you think it's ambiguous? I'd like to get where you wanted to go. We have to say it's ambiguous. We don't even get into Chevron step two unless we hit Chevron step one. Well, we can say it's ambiguous in terms of it's not clear if the person has to be an alien at the time of removal proceedings or at the time of conviction, but it's not ambiguous with respect to saying anytime after admission. That plain language says anytime after admission. Anytime a person who is an alien after admission was convicted of an aggravated felony is removable. And we're saying that the statute, the ambiguity, if there is one, is at the time. Wasn't that the exact argument that the Second Circuit made in Costello and the exact argument that the Supreme Court rejected in Costello? The Supreme Court in Costello said that both the word is and the phrase anytime after entry did not resolve the ambiguity. It said that neither of those made any clarity on whether the person needed to be an alien at the time of removal proceedings or at the time of conviction. So I hear you. I hear you acknowledging that the Supreme Court said this is ambiguous in both those fashions, both the present tense verb to be and the at any time after admission. On both those scores, the Supreme Court said ambiguity, right? So why, I guess I'm just struggling with why you think it's okay to say, yeah, yeah, we like this part of Costello, but we don't like that part of Costello. Yeah, it really was ambiguous on that first one when they said it was ambiguous, that whole present tense. But this other part that they also said was ambiguous, forget what they said. How do we get there? All right, I apologize, John, if I was unclear. More what I'm trying to say is, as I understood the question, it was, is the statute ambiguous? And I think if we can see Costello's instructive, if we wanted to go with a modern statutory scheme, the court can just look at just the aggravated felony provision. Costello can be instructive. Eisenlauber is instructive. They were both two different statutes. They both considered a person who was an alien at the time of removal proceedings, but was a citizen at the time of conviction. In one case, the person was non-removable. In another, he wasn't. And the board, in matter of roughly, looked at both of those cases. It didn't have a rule of Chevron, and it said, well, we see the ambiguity, and our case is more like Eisenlauber, not like Costello. Now we're in a new statutory scheme, almost 60 years later, and we can look at, is it ambiguous to say an alien, a person who is an alien, and convicted of an aggravated felony at any time after admission, is removable? And whether that person is an alien at the time of removal proceedings, or at the time of conviction, is what isn't clear. And that's where we would say they used these cases as a way to come to that. It happened before Chevron. They didn't have that analysis to make that detailed statutory decision, and then the court kind of followed what fit under what their statutory reading was at the time. Yeah, okay. If my colleagues in the building have one last question here, your assertion that it is ambiguous in the present tense verb is, I want to pursue that for just a minute. Eichenlaub used the past tense of the verb, has been, and it seemed to be on that basis that the Supreme Court in 60, in Costello, says that's the difference, right? That's a difference. That's not just a curiosity. It's a distinction that makes a real difference in this understanding of the statute. Now, in that I think people walk carefully around that word nowadays, recognizing the impact it can have. But is there really anything ambiguous about the statement that, if you're, the way the language of the statute is, see if I can put my finger right on it and quote it to you. This is from the aggravated felony provision. It says, any alien who is convicted of an aggravated felony, is convicted, not has been, not that you're an alien now because we've denaturalized you, and at one point you were, but an alien who is convicted. Why isn't that unambiguous in saying you needed to be an alien at the point when you were convicted? I think that's where the two cases are constructive with Costello and Eichenlaub, because yes, Eichenlaub has been convicted, but as Costello noted, and we think this is like two reasonable ways, it could be the alien is convicted because it's an alien now, and he is convicted, there's a conviction sitting on his record, or an alien who is convicted because at the time he was an alien, but that's where it's not clear. That's what I'm wondering about, because Eichenlaub uses the has been, and that's the way you get to where you are, which is, it happened sometime. You're an alien now, but at some time in the past you were convicted. This use of the present tense seems to mean, no, we're talking about being an alien when that conviction happens. That is the distinction that the Supreme Court points to, that has been versus is. If you accept that that's a distinction that's meaningful, doesn't that mean that the present tense isn't ambiguous? It's telling you you had to have been an alien when convicted. Respectfully, I don't think so, Your Honor, because when you then look at the language of Costello, which I do think is instructive here, it says an alien who is convicted at any time after entry of the crime involving moral turpitude, is convicted of two crimes involving moral turpitude. Again, it wasn't clear to them that just because it said is, that the person was an alien at the time of conviction versus an alien right now. The important point that Eichenlaub also stated was that if a person is able to use a fraudulently obtained naturalization to shield himself from removal, it creates this perverse incentive and an absurd result that advantages him over someone who doesn't naturalize fraudulently and has been convicted of an aggravated felony. Congress created the aggravated felony provision and cover a large group of aliens who they felt, as Eichenlaub says, undesirable in the United States for committing these egregious crimes. To use a fraudulently obtained naturalization as a shield sets up this absurd result that says, well, let's incentivize people to fraudulently naturalize, commit crimes, and then they get to stay in the United States. There's no consequence. There's no immigration consequence for basically double violating the law. You violate the immigration laws by misleading immigration officers, and then you violate criminal laws by committing crimes. And so that's where Eichenlaub and kind of Cassell, they might conflict in terms of using the has been or is convicted, but because it's not clear that they had to be an alien at the time of conviction, a reasonable reading is to say they're an alien now, they have the conviction, they should be removable for these offenses. Okay, well, I have to confess, I lied to my colleagues, because that takes me to one of the people I asked about, which is, is this a conviction, right? Your opponent makes the argument that textually under 1101A3, their conviction is limited to aliens. And once again, he was not an alien when convicted. So it's not, I mean, conviction is a defined term. It doesn't mean just conviction as used in ordinary parlance. It means something within the context of the INA, and it's conviction of an alien, and he was not an alien. Now, he may have been wrongly naturalized, but he was naturalized, and he was a citizen at the time. So the whole Padilla thing worked its way back in here. What's wrong with that plain text analysis? They push Perea versus Sessions on us as they ought to. I mean, I would have fired their boots and say, you know, if you look at Perea, the Supreme Court's telling you to be textually strong in interpreting the INA. Why shouldn't we be textually strong and say, well, look, according to the text of the INA, this just doesn't count as a conviction because he wasn't an alien. Well, that, Your Honor, that is where the actual denaturalization provision comes into play because the denaturalization provision denaturalizes a person from the date of the order. So in the terms of that, he was an alien. This is your, I thought that was your backup, but this comes to the fore here. Now, for this to work, you have to, for us to view this as a conviction, I hear you saying we have to accept your ab-editio argument. Is that right? He would, if we're going to be strict textual and say he had to be an alien at conviction, again, I think it may be ambiguous in that way. Does he have to be an alien at the time of conviction or an alien at the time of removal? But if you want strictly that he's an alien at the time of conviction, well, he is by the law because the denaturalization provision removes... Not according to ACPALA. Well, we actually believe ACPALA respectfully is wrongly decided. First, ACPALA did not, also did not engage with the ambiguity in the statute and it incorrectly stated that the Costello decision did not include the JRAD in all of it, but the Costello decision continued to apply the JRAD as the reason why it shouldn't relate back because it would put Costello in a disadvantaged position by relating back. So ACPALA doesn't, we believe does not help the situation because it didn't really engage with the statute. It just called Costello binding and it wasn't even considering the same statutory scheme. So ACPALA, I believe, does not does not work in this case. It doesn't, it's not completely correct and it's not completely, it's not complete. It didn't address the ambiguity issue, just sort of accepted while there's JRAD and that wasn't involved here. And if I... All right. Go ahead, Ms. Gordon. I give you a minute to sum up for what your answer and my questions and then we'll turn to Judge Mayne and Judge Horan. Okay. Well, and I wanted to come to Padilla since you mentioned it, Your Honor, and that again, we see that that's a remedy in the criminal context. The individual has a Sixth Amendment right to effective assistance of counsel in criminal proceedings and that's based on a reasonable standard of a criminal defense attorney acting under the professional obligation, professional standards. She shares the upper statement about the consequences of removal. I mean, you can't, you're, is the Department of Justice really taking the position that Padilla is just a criminal case? It has nothing to speak to or it's got no impact at all on, on how removal decisions should be viewed on, and they, that it's, it's just irrelevant to this? No, Your Honor. That's kind of what I hear you saying. It's like Padilla, forget that. That's just criminal stuff. It's criminal stuff that hinges exactly on this issue, that the enormous consequence of removal, and it's such a big, huge consequence that it's actually a violation of Sixth Amendment right to competent counsel cannot be told. You could get kicked out of the country for this. It's that big a deal. So I'm not sure I understand where you're going. If what you're trying to tell us is, Tina, you know, nothing to see here, don't look over there. That doesn't make a lot of sense to me. Is that what you're saying? No, Your Honor. We're not saying that the Padilla decision, yes, it reverts to immigration consequences, but it's not the government who is stopping Mr. Singh from receiving those immigration warnings. It was the choices that he made, and his criminal defense attorney could not know to give him warnings unless he revealed to her what he had done, that he was actually, fraudulently, a naturalized citizen, or that he concealed that. So she, and his avenue of relief on that Sixth Amendment is to go through the criminal courts and present new evidence to say that he... Your line of reasoning has to be, if you're a liar, everything that happens to you because you're a liar is your fault, and you should have known that someday you would be caught, and then you'd be denaturalized, and then that denaturalization would spring backwards, and you could be thrown out, but it's your own fault, and so you didn't deserve any warnings under Padilla. That's the arc of the reasoning I'm hearing. Have I got you straight? Exactly. It's on you. It's on you. I apologize. No, but that's it, right? It comes down to, it's all on you. Padilla has nothing to say about this because you didn't deserve a warning because you lied. I wouldn't want to put it in those terms, but I do think there's some responsibility on Mr. Singh, and what we... I know you wouldn't. Yeah, but I apologize. I want to make it clear. We do see that Padilla provides these warnings. There was concern about non-citizens who really don't know consequences, and in a case where someone has taken these steps to fraudulently obtain naturalization, that person would seem a bit more savvy, and taking it away from that, if we look at just comparing the different reasons why someone would, if you look at Costello and you have the judicial recommendation, in that case, you have a statutory provision providing relief from removal for someone with a certain conviction. Here, we don't have any statutory provision that provides that, and so we're just looking at a different case law under a different body of law, and so we don't see the Padilla as equivalent to a J round in that respect. Understood. Okay, Judge Mady, do you have any questions? Thank you, Judge Jordan. Counsel, I would welcome you to comment on the line of questioning Mr. Singh's counsel and I engaged in, and see if you depart from his conclusions, or if, as I read your supplemental briefing, you largely join in his analysis of the admissions question. Yes, Your Honor, we do largely agree, and I wanted to say and respond to one of your later questions about having to kind of determine if these cases about procedural regularity would apply, and then having to make that next step for just no status. One of the cases that we pointed out in our memorandum was matter of Chavez-Alvarez by the board, which there the board was looking specifically at the aggregated felony provision, and it was talking about whether an adjustment of status could be an admission, and an important factor there was that it was recognizing that admission for purposes of inadmissibility and removability, and for establishing eligibility for relief, needed to be interpreted in the same way in all cases to make it clear for non-citizens and for the courts. And so although it acknowledged that the plain language of the definition of admission did not require them to make this finding, that it helped for this clarity. So it was using it for the purposes of... It did, counsel. I agree, counsel. Chavez-Alvarez, which I know you rely on extensively in your briefing, does make that statement. It then also says its position is not grounded in the text of the statute, and I think it candidly acknowledges that that position has not been well-received by the courts of appeals, including our courts. So let's assume that that reasoning, lacking both judicial support and, more importantly, textual grounding, doesn't get it all the way to where you would like us to be. Where, then, is the statutory basis for Mr. Singh's admission? And again, I understand that that is a complex question, but ultimately, I think it brings us back to how I summarized it. Does it require us to then first say the rationale that perhaps Chavez has embraced should be implied as a matter of interpretive gloss on 1101, and then second, should be extended to adjustments of status for lawful permanent residency as a triggering effect? Yes, John, I think we would ask that, kind of similar to Petitioner, that it's a reasonable way to read the statute in a way that all parties and courts can understand, and then looking at, okay, well, we will accept that an adjustment of status can be an admission, and we have, you know, the case I'll show you where the board and courts have also recognized that, and I know, you know, we all kind of recognize the contradiction with HANF, but since that was targeted to one particular statute, we don't see it as hurting the ability to say that an adjustment of status, in the procedurally regular context like Martinez talks about, is an admission when we say an adjustment of status can be an admission for the purposes of inadmissibility, removability, and eligibility for relief, that it seems, we would agree that it would be reasonable for the court to be able to kind of answer both of those questions and say, yes, we can accept them, we can apply this term admission in this way, and we can apply an adjustment of purpose. Nothing further, counsel. Thank you. Thank you. All right. Thanks, Judge Horan. Do you have any questions? Okay. I, you were muted, but I, I know, I do not. Thank you. I saw that. All right. All right. Thanks, Mr. Leszek. You have three minutes for rebuttal, sir. Thank you, Your Honor. First, I'd like to note that government counsel, Ms. Gordon, is arguing that since Costello is from 1964, and because it involves the 1952 version of the INA, therefore, it is not applicable to this case. But by, by Ms. Gordon's rationale, Rossi shouldn't apply either then, because Rossi's from 1966, only two years after Costello, and Rossi also is considering the 1952 version of the INA. They're both pre-IRA-IRA decisions. So by counsel's rationale, that Costello shouldn't apply because it's the 1952 Act. Well, then Rossi shouldn't apply either. And furthermore, I want to get too swept up on that because really my basic point to Your Honor is, is that Rossi, if the court continues to pursue the INA as, as established in Zao, there's, there will be a constitutional conflict between Costello on the one hand and Padilla on the other. Because that, there will be a constitutional conflict. And as Your Honor, Judge Jordan, you stated constitutional avoidance is a real thing. And there is a way to avoid a constitutional conflict. A constitutional conflict can be avoided by simply adopting the plain language of 237-A2-A3. Any alien who is convicted of an aggravated felony at any time after admission is deportable. Any alien. The plain language of INA 101-A3 is clear. Alien means not a citizen. And the government is arguing that the term alien actually includes citizen. But a definition of alien that includes citizens would alter the fundamental details of the INA itself and add the superlative. Stop for just a minute there, Mr. Leszek, and answer the basic argument that Ms. Gordon put forward, which is, this can't be, the interpretation being pressed on you by Mr. Singh can't be what Congress meant because that has the perverse result of rewarding fraudulent admissions. People who lie to get in are better off than people who don't lie to get in and that can't be right. It can't be the case that this was meant to be a reward for people who enter fraudulently. What's your answer? That counsel's argument in regards to creating an argument. That is not a question of statutory interpretation and the question. Well, it is in this respect, right? We're trying to figure out what this statute means and her assertion is it can't mean that because that would be absurd. Congress doesn't mean to reward people who lie to get across the border and come into this country. They, you know, that's not something we should attribute to the congressional mind. And your Honor, I bring up Hanif because a similar concern was raised by the Third Circuit in Hanif. Hanif was involving a similar question, slightly different question because in Hanif it had to do with the 212H aggravated felony bar to the waiver and this provided that a lawful permanent resident who had been lawfully admitted for lawful permanent residence was not eligible for the 212H waiver if convicted of an aggravated felony. And that's where the whole distinction between admitted as being a admitted meaning procedurally regular not substantively compliant versus lawfully admitted which is in substantive compliance with the INA and the court held in Hanif that the admission by fraud was not lawfully admitted and since it was not lawfully admitted Hanif even though he procured his admission by fraud remained eligible for the 212H waiver and the court noted in Hanif this appears to produce an absurd result. How could Congress intend to reward or incentivize fraud because that's what Hanif did. He procured his admission by fraud and the court struggled with this directly and the court said that's a policy decision which is not for this court to make. The court must look at the language of the statute and unless Congress has explicitly intended a different interpretation, it's not a policy decision. The court is not permitted to make that policy decision. That policy decision is left to Congress. Okay. Well, we got your argument and we went good and long on this. We appreciate everybody's extra time and indulgence as we wrestle with a technical issue or two and as we had extra questions for you as well argued on both sides appreciate counsel's time. We've got the matter under advisement. We'll get back.